### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID SHELBY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 05-cv-589-MJR |
| M. GELIOS, PLILER, and BOB WHITEHOUSE, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I.  Introduction

On August 15, 2005, David Shelby, an inmate previously housed at the Federal Correctional Institution in Greenville, Illinois, and presently housed at the Federal Correctional Institution in Milan, Michigan, filed a civil rights complaint in this Court under **42 U.S.C. § 1983**. Shelby named three Defendants – M. Gelios, Pliler and Bob Whitehouse.

Shelby alleges that his due process rights were violated during prison disciplinary proceedings. Specifically, Shelby claims he was issued a false charge accusing him of possessing contraband and that discipline was imposed without any supporting evidence. Shelby successfully challenged the disciplinary proceedings in habeas litigation. On August 4, 2004, the United States District Court for the District of Colorado granted Shelby's petition and ordered the Bureau or Prisons to expunge the disciplinary proceeding from Shelby's prison record.

On January 24, 2007, the undersigned Judge found that the instant complaint did not survive review under § 1915A and dismissed the action with prejudice, assessing one strike under the provisions of 28 U.S.C. § 1915(g). Shelby appealed the Court's judgment, and, on August 5,

2008, the Seventh Circuit Court of Appeals remanded the case for further development of the record and resolution of issues of fact as to whether Defendants' actions violated Shelby's due process rights. ***Shelby v. Gelios*, 287 Fed.Appx. 526 (7th Cir. 2008)**. More specifically, the Seventh Circuit concluded that Shelby sought damages for the temporary loss of his good-time credits, for which he could potentially be entitled to nominal and punitive damages. ***Shelby,* Fed.Appx. 526 at 528 (citations omitted)**.

On August 10, 2009, Defendants moved to dismiss or for summary judgment (Doc. 64). Defendants Gelios and Pliler seek dismissal for failure to state a claim for relief, and all Defendants seek judgment in their favor based on qualified immunity. The motion is opposed (Docs. 69, 70).

## II. Background

On November 28, 2002, Shelby was confined at FCI-Greenville, where he was assigned to a 10-man "tank" cell. He shared the cell with four other inmates and was not able to exclude uninvited inmates. At approximately 10:00 a.m., while Shelby was working at his kitchen job, the cell was searched by correctional officers. At the time of the search, the cell was occupied by four inmates – some of whom were Shelby's cellmates. Items believed to be contraband were discovered under, next to and on a cellmate's bunk, as well as on a bunk that was unassigned but used by someone other than Shelby.

After the search, Gelios interviewed Shelby, who denied all knowledge of the items that were found in the cell. In January 2003, Gelios charged Shelby with a violation of disciplinary code 113: possession of any narcotics. As a result of the charge, Shelby was relocated to a special housing unit.

Pliler investigated the charge on January 3, 2003. Following his interview with

Shelby, Pliler found that Gelios's charge was adequately supported and referred the charge to a disciplinary hearing officer, Whitehouse, for further proceedings.

A hearing was held on January 16, 2003. Whitehouse heard testimony from and reviewed a written statement from an inmate who accepted full and exclusive responsibility for the contraband discovered during the search. Although Shelby's innocence was demonstrated with credible evidence, Whitehouse found Shelby guilty of possession of narcotics and imposed sanctions, including 30 days of disciplinary segregation, 40 days of disallowed good conduct time and 180 days of lost visitation privileges.

Shelby challenged the sanctions in habeas corpus proceedings. On August 4, 2004, Judge Phillip S. Figa granted Shelby's habeas petition, finding that he was disciplined without enough evidence to satisfy the "some evidence" standard. That decision was not challenged on appeal; Shelby's disciplinary conviction was expunged and his good conduct credits restored.

### III. Defendants Gelios and Pliler

Gelios and Pliler seek dismissal of Shelby's complaint on the basis that the allegations against them do not state a viable due process claim. The argument is evaluated under Rule 56 of the Federal Rules of Civil Procedure. **Fed. R. Civ. P. 12(d), 56.**[1]

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c);** *see also Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986)**.

---

[1] The Seventh Circuit Court of Appeals found that Shelby stated a civil rights claim for a due process violation (Doc. 34). That decision controls any Rule 12 challenge to the sufficiency of the allegations. ***Zamora-Mallari, v. Mukasey*, 514 F.3d 679, 695 (7th Cir. 2008)(certain decisions are binding under the law of the case doctrine)**.

The facts presented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**.

Beginning with *Wolff v. McDonnell*, **418 U.S. 539 (1974)**, the Supreme Court established the minimum requirements of procedural due process to be afforded to prisoners in disciplinary proceedings. Before being deprived of a liberty interest, a prisoner is entitled to (1) advance written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence when consistent with institutional safety; and (4) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, **472 U.S. 445, 455 (1985)**. While there is no due process right to a prehearing investigation, *Whitford v. Boglino*, **63 F.3d 527, 532 (7th Cir. 1995)**, the ultimate decision to impose sanctions must not be arbitrary. In other words, the decision to impose sanctions must be supported by at least "some evidence." *Superintendent*, **472 U.S. at 455**.

With respect to Gelios, Shelby can prove that he initiated disciplinary proceedings based on information suggesting that items of contraband were discovered in a cell which Shelby shared with other inmates. A hearing officer later decided that Shelby possessed narcotics. That decision rested, in part, on information provided by Gelios.

Gelios argues that he did not deprive Shelby of any of the procedural requirements of *Wolff*, and that, accordingly, his specific conduct did not violate Shelby's due process rights. Pliler contends that his conduct did not violate Shelby's due process rights because his actions were consistent with prison regulations and because an adequate investigation is not one of the procedural rights recognized by the courts. Shelby maintains that these Gelios and Pliler initiated and processed false charges when they knew he was innocent of any wrongdoing.

In *Hanrahan v. Lane*, **747 F.2d 1137 (7th Cir.1984)**, the Seventh Circuit held that allegations that a correctional officer filed false disciplinary charges did not state a due process claim when the accused inmate was given a subsequent hearing on those charges and had the opportunity to refute or impeach the evidence during the hearing.  *Hanrahan,* **747 F.2d at 1141**. The Court of Appeals reasoned that, while prisoners have a right to be free from arbitrary actions of prison officials, the procedural protections outlined in *Wolff* provide the appropriate level of protection.  *Id*. **at 1140 (citing** *Wolff,* **418 U.S. at 558) ("Before a prisoner can be sanctioned,... the prison officials must provide those procedural requirements outlined in** *Wolff v. McDonnell:*  **advance written notice of violation, written statement of fact-finding, the right to present witnesses and present evidence where it would not be unduly hazardous to institutional safety.  In addition, an impartial decisionmaking body protects the integrity of the procedure.")**.

The materials on file show that Shelby received all of the procedural protections outlined in *Wolff*.  He received adequate, advance written notice of the charge lodged against him, an opportunity to be heard before an impartial hearing officer, an opportunity to present exculpatory evidence, a detailed description of the evidence relied on and a statement of the rationale for the decision to impose sanctions.  If a due process violation occurred, it occurred despite these protections – when Whitehouse failed to support his decision with "some evidence" of misconduct.

The Court is not persuaded that liability for a due process violation characterized by an inadequately-supported decision flows in reverse to the individuals who initiated charges and gathered information.  Neither Gelios nor Pliler deprived Shelby of the procedural protections guaranteed by *Wolff* or of a decision supported by some evidence.  They had no constitutional duty to anticipate that Whitehouse would not accept exculpatory testimony and would impose sanctions

without supporting his decision with evidence. Gelios and Pliler are entitled to judgment in their favor on Shelby's due process claim.

### IV. Defendant Whitehouse

Whitehouse argues that he has qualified immunity from an award of damages. In order to resolve this argument, the Court applies a two-pronged test. First, the Court must decide whether Whitehouse violated Shelby's due process rights, taking the facts in the light most favorable to Shelby. The Court then must determine whether the right violated was clearly established in light of the specific context of the case. **Saucier v. Katz, 533 U.S. 194, 201 (2001)**.

Whitehouse urges the Court to conclude that his decision to find Shelby guilty of possessing narcotics was based on at least some evidence. Specifically, he points to evidence that drugs were scattered throughout the cell which Shelby shared with a number of other inmates. This evidence, he suggests, made it somewhat likely that Shelby possessed the drugs.[2]

The evidence, construed in Shelby's favor, supports a finding that Whitehouse deprived Shelby of good time credits without supporting his decision with at least some evidence that Shelby possessed drugs. The "some evidence" standard is a meager level of proof, which may be met by inferring actual possession from the surrounding circumstances. **Hamilton v. O'Leary, 976 F.2d 341, 345 (7th Cir. 1992); Howard. v. U.S. Bureau of Prisons, 487 F.3d 808, 812 (10th Cir. 2007)**. Shelby's version of the events will (and has) supported a finding that he was disciplined on the basis of an inference of possession overcome by credible exculpatory evidence demonstrating

---

[2] Whitehouse relies, in part, on a recommendation mentioned in a brief filed in the habeas proceedings (Doc. 65-5). Because the relevant portion of the recommendation is not before the Court, the strength of the legal analysis contained in that document cannot be assessed.

that the drugs were exclusively possessed by another inmate. The result is that Shelby was sanctioned without evidence linking him to the drugs in any reliable fashion. Thus, Shelby satisfies the first prong of the test announced in ***Saucier***.

However, Shelby is unable to satisfy the second prong of the ***Saucier*** test. His right not to have his good conduct credits taken on the theory of constructive possession was not well established in January 2003. On this point, the Court has evaluated the decisions mentioned in Shelby's brief, as well as other decisions applying the "some evidence" standard in the context of prison disciplinary proceedings prior to January 2003. Those decisions do not clearly establish that a hearing officer is precluded from basing a finding of guilt on the theory of constructive possession where exculpatory evidence has been presented. In early 2003, Whitehouse could reasonably believe that Shelby could be held responsible for everything hidden in a cell he shared with a relatively small number of inmates. ***See Hamilton*, 976 F.2d at 345**. At that time, facts linking several inmates to the location where contraband was hidden was sufficient to boost the decision above the arbitrary level. The presence of exculpatory evidence was deemed relevant to the "some evidence" analysis in rare circumstances – not when the exculpatory information "could have supported a different result from that reached." ***Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996)**. In sum, the role of exculpatory evidence in the particular context of constructive possession of items hidden in a cell was not well-established in early 2003. Hence, Whitehouse is entitled to qualified immunity because the right violated was not clearly established in light of the specific context of this action.

### V. **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 64) is **GRANTED**, and this action is **DISMISSED** with prejudice. The Clerk of Court shall enter judgment against Plaintiff David Shelby and in favor of Defendants M. Gelios, Pliler and Bob Whitehouse.

**IT IS SO ORDERED.**

**DATED this 30th day of December, 2009.**

> **s/Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**